UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHELLE ANN FOURNIER | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 09-cv-224 (JCH) |
| | : | |
| DONNA ZICKEFOOSE, WARDEN, | : | MAY 11, 2009 |
| Respondent. | : | |

**RULING RE: APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241 (DOC. NO. 1)**

**I.      INTRODUCTION**

Petitioner Michelle Ann Fournier is currently serving a 41-month sentence at the

Federal Prison Camp in Danbury, Connecticut ("FPC Danbury").  She is scheduled to

be released from custody on September 13, 2009.  On February 6, 2009, Fournier,

acting pro se, filed an Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. §

2241 (the "Application") alleging that the Federal Bureau of Prisons (the "BOP") is

violating her constitutional rights by not allowing her to serve the remainder of her

sentence either in a residential reentry center ("RRC"), also known as a halfway house,

or on home confinement.  Fournier seeks an order of the court directing the BOP to

allow her to serve the remainder of her sentence in a RRC or on home confinement.

Respondent Warden Donna Zickefoose opposes Fournier's Application.

Warden Zickefoose argues that: (1) Fournier has failed to exhaust her administrative

remedies; (2) the BOP has sole and exclusive discretion to determine whether (and for

how long) to place an inmate in a RRC or on home confinement; and (3) Fournier does

not have a constitutional right to be placed on home confinement.

For the reasons set forth below, Fournier's Application for a Writ of Habeas Corpus is denied.

## II.     BACKGROUND

On July 25, 2006, petitioner Michelle Ann Fournier was sentenced by the United States District Court for the District of Nevada to 41 months imprisonment for embezzlement.  See Application at 8.  Fournier arrived at FPC Danbury on or about September 29, 2006.  See Declaration of Rachel Chapa ("Chapa Declaration"), Exhibit 1 to Respondent's Response to Petitioner's Prayer for Habeas Corpus Petition, Doc. No. 3, ("Response"), at ¶ 3.  She is scheduled to be released from BOP custody on September 13, 2009, her Good Conduct Time release date.  See id.; 18 U.S.C. § 3624(b).

On or about September 24, 2008, Fournier was considered for pre-release placement in a RRC pursuant to the Second Chance Act of 2007, 18 U.S.C. §§ 3621, 3624.[1]  See Chapa Declaration at ¶ 6.  Fournier's Unit Team at FPC Danbury recommended that she be placed in a RRC for 150 to 180 days to provide the greatest likelihood of successful reintegration into the community following her imprisonment. See id.  Based on this recommendation, on or about January 13, 2009, Warden Zickefoose signed an Institutional Referral recommending Fournier for a 180-day RRC placement, and submitted the referral to the BOP's Community Corrections Manager ("CCM") for review and consideration.  See id. at ¶ 7.  A 180-day RRC placement would

---

[1] The Second Chance Act of 2007 increases the possible duration of pre-release placement in a community corrections center from six months to twelve months and requires the Bureau of Prisons to make an individual determination that ensures any placement is of sufficient duration to provide the inmate with the greatest likelihood of successful reintegration into the community.  See 18 U.S.C. § 3624.

have transferred Fournier to a RRC on or about March 15, 2009.  <u>See</u> Application at 9.

In response to the referral from Warden Zickefoose, on January 15, 2009, Contract Oversight Specialist Michael Kreibich of CCM's Phoenix, Arizona field office notified Fournier's Unit Team at FPC Danbury that, due to "public safety concerns," the fact that Fournier has "resources in the community," and "population pressures," CCM was only recommending Fournier for a RRC placement of 60 days.  E-mail, Exhibit E to Chapa Declaration.  In a Declaration, Kreibich later explained that several factors affected his decision to limit Fournier's placement to 60 days, including that Fournier: (1) "has a residence in place with her mother, is employable and has available resources in the community to assist her in reintegrating into society;" (2) "is serving a relatively short sentence of 41 months, which generally means shorter placements are sufficient;" and (3) committed a significant offense "with numerous victims and for which she still owes approximately $2,000,000 in restitution."  Declaration of Michael Keribich, Exhibit 2 to Response, at ¶ 5.  Kreibich further noted that "bed space in [BOP] RRC's are at a premium [which] results in a generally decreased duration of each referral and approved placements.  This is particularly true in cases where the offender has ample resources."  <u>Id.</u>

As a result of this determination by the regional CCM office, Fournier was approved for a RRC pre-release placement of July 15, 2009, which constitutes a 61-day placement.  <u>See</u> Chapa Declaration at ¶ 8.

On January 26, 2009, Fournier was called to the FPC Danbury Case Manager's office and notified that, due to "a population issue" and "inmates staying [in RRCs] longer due to the tough job market," she was approved for a RRC placement date of

July 15, 2009.  Application at 9.  Fournier inquired about home confinement at this

meeting and was told that she must be placed in a RRC before being eligible for home

confinement.  See id.; accord Chapa Declaration at ¶ 9 ("The practice of the Bureau of

Prisons is to place an inmate in a pre-release placement within an RRC, rather than

directly to Home Confinement.  Once the inmate is at the RRC . . . the Director of the

RRC will determine in his or her discretion whether the inmate is eligible and

appropriate for Home Confinement").[2]

On February 6, 2009, Fournier filed the present Application, alleging that the

BOP is violating her rights by not allowing her to spend the remainder of her sentence

in a RRC or on home confinement.  Specifically, Fournier contends that the decision to

limit her RRC placement to 60 days is based on erroneous and fabricated information,

is capricious, arbitrary, and malicious, and is a substantial violation of her constitutional

rights.[3]

## III.    DISCUSSION

### A.    Fournier's Exhaustion of Administrative Remedies

Warden Zickefoose argues that Fournier's Application should be denied because

Fournier initiated this action before exhausting her administrative remedies.  See

---

[2] It bears noting that, under 18 U.S.C. § 3624(c)(2), the BOP may only place a prisoner in home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Because Fournier is serving a 41-month sentence, she is not eligible for home confinement until May 29, 2009, her "10-percent date".

[3] In the Application, Fournier states, "Defendant asserts that her due process rights pursuant to 3624(c)(2) has been violated by the BOP, impeding her right to at least obtaining the minimum 10% of the term of imprisonment in home confinement." Application at 9.  In her Reply, however, Fournier states that she is raising "3 substantial constitutional Amendments that have been violated, 6th, 8th, and 14th Amendments – Due process of the law (6 & 14) and Cruel and Unusual Punishment (8)."  Reply at 6. Fournier seeks either: (1) immediate transfer to a RRC and then transfer from the RRC to home confinement on her 10-percent date; or (2) immediate transfer to home confinement.  See Reply at 1, 6.

Response at 5.  Fournier admits that she did not seek administrative relief before commencing this action, but argues that, in this case, administrative exhaustion would be futile.  See Application at 2.

The Second Circuit has made clear that a petitioner must exhaust her administrative remedies prior to filing an action under section 2241.  See, e.g., Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 1990) (citing Gonzalez v. Perrill, 919 F.2d 1, 2 (2d Cir. 1990) (per curiam)).  The Circuit has also recognized, however, that exceptions to the exhaustion requirement exist when exhaustion is not statutorily mandated, and when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question."  Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003) (quotation marks omitted).  The purposes of exhaustion have been recognized as "protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record."  Id. at 56.  Thus, to argue that exhaustion is futile is to argue that the purposes of exhaustion will not be met by the administrative process.  See id. at 62.

The BOP's Administrative Remedy Program (the "Program") allows an inmate to seek formal review of an issue relating to any aspect of her imprisonment.  See generally 28 C.F.R. §§ 542.10-542.19.  Under the Program, an inmate shall first present an informal request to staff concerning the confinement issue, and if informal resolution is unsuccessful, the inmate may submit a formal, written request for administrative remedy.  See id. §§ 542.13-542.14.  After the inmate submits a written

request for consideration, the Warden of the facility in which the inmate is housed has

20 calendar days to respond.  See id. § 542.18.  If the inmate is dissatisfied with the

response, she may take an appeal to the appropriate BOP Regional Director within 20

calendar days.  See id. § 542.15.  If such an appeal is taken, the Regional Director has

30 calendar days to respond.  See id. § 542.18.  If the inmate is dissatisfied with the

Regional Director's response, she has 30 calendar days from the date of that response

to take an appeal to the BOP General Counsel.  See id. § 542.15.  The General

Counsel then has 40 days to respond.  See id. § 542.18.  Throughout this process, the

BOP may reject and return to the inmate, without response, any request or appeal that

is written in a manner that is obscene or abusive, or does not meet any of the BOP's

other requirements.  See id. § 542.17.  When a submission is so rejected and the basis

for the rejection is correctable, the inmate must be provided a reasonable time to

correct and resubmit her appeal.  See id.

Fournier concedes that she filed the present Application without initiating this

formal remedy process.  See Application at 5 ("[I]t was senseless to pursue

administrative remedies").[4]  She argues that pursuing administrative remedies would

have been futile in her situation because, inter alia, "the average time for a full course of

remedies to complete takes anywhere from 6 -12+ months."  Reply at 5.  According to

Fournier, an administrative remedy that would take six to 12 months provides no

genuine opportunity for adequate relief in this case because she is seeking immediate

---

[4] Approximately seven weeks after filing the Application, Fournier filed two forms which appear to have began the formal administrative remedy process.  See Exhibits to Reply.  On the first form, Fournier states, "Currently I am pursuing legal remedies to be applicable [sic] for a minimum of 10% of my term of imprisonment in home confinement.  However, I want to ensure that I have pursued administrative BOP remedies too."  See id.

transfer to a RRC or home confinement.  Moreover, initiating the formal administrative

process would be futile, Fournier argues, because this entire action will become moot

on July 15, 2009, when Fournier is scheduled to be transferred to a RRC.  The court

agrees.

Although the court is well-aware that exhaustion is generally required before an

action may be brought under section 2241, given the circumstances of this case –

including, inter alia, the obvious urgency of her Application and the near certainty that

forcing her to pursue administrative remedies will render this case moot – the court

excuses Fournier's failure to exhaust administrative remedies.  See Pimentel v.

Gonzales, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005) ("Because the exhaustion

requirement for Section 2241 petitions is prudential, not statutory, courts have

frequently waived exhaustion requirements in Section 2241 challenges . . . on the

grounds that exhaustion would be futile").

B.      Fournier's Constitutional Claims

1.      Due Process Claim

Fournier argues that the BOP's failure to place her in a RRC immediately, and its

failure to place her in home confinement immediately upon her statutory eligibility,

violate her constitutional rights to due process of law.[5]  This argument is without merit.

The general rule is that the Fifth Amendment's Due Process Clause does not

confer any right upon an inmate to any particular custody or security classification.  See

---

[5] While Fournier asserted her due process rights under the Sixth and Fourteenth Amendments,
the court recognizes that she likely meant to refer to the Due Process Clauses of the Fifth and Fourteenth
Amendments.  Further, because Fournier alleges due process violations by the federal government, and
not the government of any state, the court addresses only the Fifth Amendment.

Moody v. Daggett, 429 U.S. 78, 88 (1976) ("Congress has given federal prison officials

full discretion to control [prisoner classification and eligibility for rehabilitative programs

in the federal system] . . . and petitioner has no legitimate statutory or constitutional

entitlement sufficient to invoke due process") (citation omitted).  Further, "[t]he BOP is

the sole agency charged with discretion to place a convicted defendant within a

particular treatment program or a particular facility."  Levine v. Apker, 455 F.3d 71, 83

(2d Cir. 2006).  An individual sentenced to a period of federal imprisonment is

committed to the custody of the BOP under 18 U.S.C. § 3621(a).  Once the individual

has been committed, the BOP has discretionary authority both in determining the

individual's initial placement and in directing the transfer of the prisoner from one penal

or correctional facility to another.  See 18 U.S.C.  § 3621(b); see also Levine, 455 F.3d

at 80 ("Congress's use of the language 'may designate' in § 3621(b) seemingly endows

the BOP with 'broad discretion'").  In determining such placements and transfers, the

BOP must consider the following five factors:

> (1) the resources of the facility contemplated; (2) the nature and
> circumstances of the offense; (3) the history and characteristics of the
> prisoner; (4) any statement by the court that imposed the sentence . . . ; and
> (5) any pertinent policy statement issued by the Sentencing Commission
> pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); see also Levine, 455 F.3d at 81 ("Significantly, Congress used the

word 'and' rather than 'or' to unify its five concerns. All of the listed factors must

therefore be considered").

The Second Chance Act does not deprive the BOP of its discretion under section

3621(b).  Under the Second Chance Act:

The Director of the Bureau of Prisons shall, to the extent practicable, ensure

that a prisoner serving a term of imprisonment spends a portion of the final
months of that term (not to exceed 12 months), under conditions that will
afford that prisoner a reasonable opportunity to adjust to and prepare for the
reentry of that prisoner into the community. Such conditions may include a
community correctional facility.

18 U.S.C. § 3624(c)(1).  Thus, the BOP "retains discretion under the Second Chance

Act to decide whether and when an inmate should be placed at an RRC, provided such

pre-release confinement is practicable and the BOP considers the statutory factors."

Daraio v. Lappin, 2009 U.S. Dist. LEXIS 9675 (D. Conn. Feb. 9, 2009).

In this case, despite Fournier's arguments to the contrary, the court finds that the

BOP was within its authority to place Fournier in a RRC for 60 days.  The BOP

considered the statutory factors of 18 U.S.C. § 3621(b), and there is no indication that

such placement is not practicable.  See Chapa Declaration at ¶ 6; see also Residential

Re-Entry Center Consideration Memo, Exhibit C to Chapa Declaration; Kreibich

Declaration at ¶ 5.

That said, the court recognizes that Contract Oversight Specialist Kreibich

appears to have erred in stating that Fournier's offense involved "numerous victims"

and that she "still owes approximately $2,000,000 in restitution."[6]  Despite these errors,

however, the factors noted by Kreibich appear to support a placement of 60 days rather

than 180 days.  Chief amongst these factors, as Kreibich noted, is the constraint on bed

---

[6] Fournier avers that her offense included one victim, rather than "numerous victims" as indicated
by Keirbich, and further that, at the time of Keirbich's decision, she owed approximately $992,264.96, and
not $2,000,000.  Fournier supports this argument with the Declaration of Daniel A. Rozansky, a partner
with the law firm of Stroock & Stroock & Lavan LLP who represents HSBC Card Services, Inc. ("HSBC")
the victim of Fournier's embezzlement.  See Affidavit of Daniel A. Rozansky ("Rozansky Affidavit"), Exhibit
3 to Reply.  In his Affidavit, Rozansky states that the full restitution is owed to HSBC, and that as of July
13, 2007, HSBC had collected a total of $1,020,385.04 and anticipated collecting an additional $850.00.
Rozansky Affidavit at 2.

space at Fournier's chosen RRC facility.  See Kreibich Declaration at ¶ 5.

Regardless of whether the court agrees with Kreibich, however, once the court

has determined that the BOP did not exceed its authority in reaching its decision, it is

beyond the purview of the court to second guess the outcome.  See Fullenwiley v.

Wiley, 1999 U.S. Dist. LEXIS 23066 (N.D.N.Y Oct. 5, 1999) ("[D]iscretionary decisions

by the BOP made pursuant to its authority under § 3621(b) are not subject to judicial

review"); see also 18 U.S.C. § 3625.  As a result, the court finds that the BOP did not

violate Fournier's due process rights by assigning her a RRC placement date of July 15,

2009.

### 2.      Cruel and Unusual Punishment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual

punishments."  U.S. Const. Amend. VIII.  "To prove a violation of the Eighth

Amendment, an inmate must show (1) that the deprivation alleged is 'objectively

sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of

life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable

state of mind' associated with 'the unnecessary and wanton infliction of pain.'"

Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (quoting Farmer v. Brennan, 511

U.S. 825, 834 (1994)).

Fournier's Eighth Amendment claim is based solely on the BOP's refusal to

immediately transfer her to a RCC, or to home confinement at her earliest eligibility.  As

noted above, Fournier does not have a constitutional right to serve the remainder of her

sentence in a RCC or on home confinement.  Moreover, Fournier neither claims that

she has been deprived of the "minimal civilized measure of life's necessities," nor that

Warden Zickefoose or any other BOP official acted with sufficiently culpable state of mind in subjecting her to the unnecessary and wanton infliction of pain.  Id. Accordingly, Fournier's cruel and unusual punishment claim is without merit.

## IV.    CONCLUSION

For the foregoing reasons, petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. No. 1) is **DENIED**.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 11th day of May, 2009.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge